UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

LESLIE REED ET AL                    CASE NO.  3:17-CV-01382

VERSUS                               JUDGE TERRY A. DOUGHTY

LOUISIANA DEPARTMENT OF              MAG. JUDGE KAYLA D. MCCLUSKY
CORRECTIONS ET AL

<u>**MEMORANDUM RULING**</u>

Before the Court is a Motion for Summary Judgment [Doc. No. 103] filed by Defendants

Jay Russell ("Russell") and Donna Norman ("Norman") (collectively, "Defendants"). Plaintiffs

Leslie Reed ("Reed") and Otis McGinnis ("McGinnis") (collectively, "Plaintiffs") filed a response

in opposition [Doc. No. 109], and Defendants filed a reply [Doc. No. 111].

For the reasons set forth herein, Defendants' Motion is **GRANTED**.

I.      **BACKGROUND**

The instant action revolves around the death of Brandon Reed ("Reed"), a former inmate

of Ouachita Correctional Center ("OCC") in Monroe, Louisiana.[1] Reed was booked into OCC on

November 4, 2015.[2] In their initial complaint, Plaintiffs assert that in February 2016, while

incarcerated at OCC, Reed began experiencing a chronic cough, difficulty eating and digesting

food, and significant weight loss.[3] Further, Plaintiffs claim that Reed and his family members,

including his mother, father, siblings, and uncle, reported his medical conditions to the Louisiana

Department of Corrections and the Ouachita Parish Sheriff's Office on multiple occasions.[4]

---

[1] [Doc. No. 1]
[2] [Doc. No. 103-1, citing [Doc. No. 103-3, p. 3]]
[3] [Doc. No. 109, p. 2] Plaintiffs made these allegations in the factual background section of the memorandum in opposition. Plaintiffs did not provide citations or evidentiary support for these claims.
[4] [Id.]

According to Plaintiffs, Reed sought medical assistance at Prison Medical Services for his symptoms in May and August 2016 from Donna Norman N.P. and Deputy Crecink.[5] However, Plaintiffs allege that he was only provided with cough drops and anxiety medication without undergoing any further evaluations.[6] Plaintiffs argue that Defendants' actions violated Reed's constitutional rights and ultimately led to his death on October 26, 2016.[7] Reed's cause of death was sepsis caused by pneumonia, which Plaintiffs claim could have been prevented through adequate medical care.[8]

As a result of the foregoing, Plaintiffs filed suit against Norman and Russell. Norman is an OCC medical staff member sued in her individual capacity.[9] Russell is the Sheriff of Ouachita Parish, Louisiana, sued in his official capacity as sheriff.[10]

The Complaint alleges several claims against Defendants. First, Plaintiffs claim that Defendants violated Reed's constitutional rights, specifically his rights to due process, equal protection under the law, and to be secure in his person, by showing deliberate indifference to his medical needs while he was in the custody of the Louisiana Department of Corrections and/or Ouachita Parish Sheriff.[11] Second, Plaintiffs assert that Defendants failed to provide Reed with adequate medical care and treatment, despite his ongoing complaints and pleas for help.[12] They argue that this failure to intervene and provide necessary medical services resulted in Reed's death from sepsis caused by pneumonia, which they contend was a preventable and foreseeable outcome.[13] Lastly, Plaintiffs claim that as a result of Defendants' actions and omissions, they have

---

[5] [Id.]
[6] [Doc. No. 109, p. 2]
[7] [Id. at p. 4]
[8] [Id. at p. 4]
[9] [Doc. Nos. 1; 103-1, p. 11]
[10] [Id.]
[11] [Doc. No. 1]
[12] [Id.]
[13] [Id.]

suffered substantial damages, including medical expenses, deterioration of Reed's physical health, humiliation, depression, stress, and loss of enjoyment of life.[14]

In their Motion for Summary Judgment, Defendants dispute the claims made by Plaintiffs, arguing that Defendants were not responsible for Reed's medical care during certain periods.[15] They also assert that any alleged denial of medical care by Norman is either time-barred or, in the alternative, lacks merit.[16] Defendants point out that Reed's condition deteriorated at the hospital, leading to his cardiac arrest on October 24, 2016, and subsequent passing on October 26, 2016.[17] Thus, Defendants argue they are entitled to judgment as a matter of law on each of Plaintiffs' claims against them.

In response, Plaintiffs argue that Defendant, Norman, is not entitled to qualified immunity relying on assertions that she was aware of Reed's condition and that her subordinates refused to treat Reed.[18] Additionally, Plaintiffs argue that their claims are not time barred because the discovery rule applies, and the claims were filed at an appropriate time given their discovery.[19] Finally, Plaintiffs allege that they are afforded with the presumption that Defendants actions were the cause of Reed's death.[20]

**LAW AND ANALYSIS**

**A.  Standard of Review**

Federal Rule of Civil Procedure 56(a) states:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

---

[14] [Id.]
[15] [Doc. No. 103-1]
[16] [Id.]
[17] [Id.]
[18] [Doc. No. 109, pp. 10]
[19] [Id. at pp. 6–7]
[20] [Id. at pp. 18]

and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion.

"If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (internal quotation marks and citation omitted); *see also* FED. R. CIV. P. 56(c)(1).

A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (*citing Anderson*, 477 U.S. at 248). However, in evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. "A non-conclusory affidavit can create genuine issues of material fact that preclude summary judgment, even if the affidavit is self-serving and uncorroborated." *Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020) (citations omitted).

**B.  Analysis**

Defendants argue the following in support of their Motion for Summary Judgment: 1) All claims prior to October 2016 have prescribed;[21] 2) Plaintiffs have no valid claims against Russell

---

[21] [Doc. No. 103-1, pp. 6–15]

in his official capacity as Sheriff of Ouachita Parish, Louisiana;[22] 3) Norman is entitled to qualified immunity;[23] 4) Plaintiffs cannot establish medical causation;[24] 5) Plaintiffs have not presented a valid claim under the Rehabilitation Act;[25] and 6) Plaintiffs do not have a valid claim under Louisiana state law.[26] In response, Plaintiffs argue that the claims are not prescribed, that Plaintiffs have established their burden of proof for all claims, and that medical causation must be determined by the trier of fact.

The Court will address each argument below.

### 1.   Claims made prior to October 2016 are prescribed.

Defendants argue that all claims prior to October 2016 have prescribed.[27] In support, Defendants cite to 42 U.S.C. § 1983, which states that federal courts—in the absence of a federal statute of limitations—apply the state's prescription statute.[28] Defendants note that Louisiana's one-year prescriptive period for personal injury actions, as stated in Civil Code article 3492, applies to both federal and state law claims.[29] Further, Defendants assert that the continuing violation theory does not apply unless there is a fixed and continuing practice, and each instance of denial of medical care constitutes a discrete act with its own prescription period.[30]

In response, Plaintiffs agree that the applicable prescription statute in this case is Civil Code article 3492, which establishes a one-year prescriptive period for tort claims.[31] However, Plaintiffs assert that the prescriptive period began when Plaintiffs knew or should have known

---

[22] [Id. at pp. 21–29]
[23] [Id. at pp. 29–33]
[24] [Id. at pp. 33–34]
[25] [Id. at pp. 34–35]
[26] [Id. at pp. 35–36]
[27] [Id. at pp. 15]
[28] [Id. at pp. 13–14]
[29] [Id at pp. 14]
[30] [Id.]
[31] [Doc. No. 109, pp. 6-7]

about the facts that would have allowed them to state a cause of action for wrongful death resulting from the denial of medical care.[32] Further, Plaintiffs argue that prescription statues should be strictly construed against their application, and the burden of proving prescription lies with the party pleading it.[33]

Plaintiffs' claims arise under both 42 U.S.C. § 1983 and Louisiana state law. Because Section 1983 does not provide a statute of limitations, "federal courts apply the state prescription statute governing [the] most analogous cause of action." *Drury v. U.S. Army Corps. of Eng'rs*, 359 F.3d 366, 367 n.1 (5th Cir. 2004) (referencing *Braden v. Texas A & M Univ. Sys.*, 636 F.2d 90, 92 (5th Cir.1981) (holding that because Section 1983 has no statute of limitations period, federal courts apply the state prescription statute governing the most analogous cause of action)). Accordingly, both the federal and state law claims here are subject to the prescriptive period provided by Louisiana law. For actions brought pursuant to Section 1983, federal courts borrow the forum state's personal-injury limitations period. *Brown v. Cain*, 546 F. App'x 471 (5th Cir. 2013). In Louisiana that period is one year. La. C.C. art. 3492.The party pleading prescription bears the burden of proving that the claim has prescribed; however, "when the face of the petition reveals that the plaintiff's claims have prescribed, the burden shifts to the plaintiff to demonstrate prescription was suspended or interrupted." *Harris v. Breaud*, 243 So. 3d 572, 579 (La. App. 1st Cir. 2018).

In *Harris*, the plaintiffs argued that their claim had not prescribed because of the discovery rule. *Id.* Under the discovery rule, "prescription does not begin to run until the plaintiff knows of sufficient facts and has a reasonable basis for filing suit against a certain defendant." *Id.* The *Harris* court found that the plaintiff's claims had prescribed on their face, and the plaintiffs bore the

---

[32] [Id. at pp. 6]
[33] [Id.]

burden of proving the claims were not prescribed. *Id.* However, the plaintiffs alleged no facts regarding their inability to discover the claim, and the plaintiffs did not allege a date that the claim was discovered on. *Id.* at 579–80. Given the lack of facts and evidence, the *Harris* court found that the plaintiffs failed to carry their burden. *Id.*

Similarly, in the instant action, Plaintiffs do not allege facts that point to an inability to discover the claim. Plaintiffs' Complaint and Opposition merely state that the discovery rule applies in this case, but neither provides the Court with relevant allegations that could lead to a conclusion that Plaintiffs could not have discovered the claim or that the claim was discovered on another date. Plaintiffs did state that family members contacted OCC notifying them that Reed was receiving poor medical treatment. However, given that Plaintiffs provide nothing more than conclusory statements regarding the application of the discovery rule, all claims prior to October 2016 have prescribed and must be dismissed.

It is unclear from Plaintiffs' Complaint and Opposition whether they assert a continuing tort theory to extend prescription; however, even if Plaintiffs are asserting that the actions by Defendants constituted a continuing tort, the claims have prescribed. "In order to allege a continuing tort, a plaintiff must allege both continuous action and continuous damage." *Id.* When there is a continuing tort, prescription begins to run when the "conduct causing the damage is abated." *Id.*

In the present case, the conduct alleged to have caused damage to Reed was the failure to provide sufficient medical care or neglect in providing medical care. Plaintiffs allege that the last medical complaint made by Reed occurred in August 2016. This would be the last date the conduct that was causing the damage occurred. Given that the action was filed in October of 2017, the one-year prescriptive period has run and the claims arising prior to October 2016 have prescribed.

### 2. Plaintiffs do not have valid claims against Russell in his official capacity as sheriff.

Defendants argue that Plaintiffs do not have valid claims against Russell in his official capacity as Sheriff of Ouachita Parish, Louisiana.[34] Specifically, Defendants assert that Plaintiff failed to properly plead their *Monell* claim, which is necessary to hold a municipality or local government liable for the misconduct of its employees.[35] Further, Defendants contend that Plaintiffs have failed to identify any official unconstitutional policy or a pattern of similar prior incidents to establish the existence of a custom or policy.[36] Finally, Defendants argue that Plaintiffs have not identified any policy, practice, or custom that violated Reed's constitutional rights, and their allegations regarding failure to train, supervise, or discipline correctional officers lack specificity and fail to show deliberate indifference.[37]

Plaintiffs failed to respond to Defendants' arguments on this issue.

### a. Plaintiffs have not plead sufficient facts to survive a motion for summary judgment on their *Monell* claim.

In order to establish a *Monell* claim and survive summary judgment, Plaintiffs "must show that (1) an official policy (2) promulgated by the municipal policy maker (3) was the moving force behind the violation of a constitutional right." *Hicks-Fields v. Harris Cty., Tex.*, 860 F.3d 803, 808 (5th Cir. 2017) (*citing Peterson v. City of Ft. Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009)). An official policy "includes the decisions of a government's law-makers, the acts of its policy making officials, and practices so persistent and widespread as to practically have the force of law." *Pena v. City of Rio Grande, Tex.*, 879 F.3d 613, 621–22 (5th Cir. 2018) (*quoting Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citations omitted)). Additionally, "a complaint's 'description of a policy

---

[34] [Doc. No. 103-1, pp. 21]
[35] [Id.]
[36] [Id. at pp. 23]
[37] [Id. at pp. 28–29]

or custom and its relationship to the underlying constitutional violation…cannot be conclusory; it must contain specific facts.'" *Id.* at 622 (*quoting Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)).

In *Pena*, the plaintiff was injured after being tased by police officers. The plaintiff asserted a *Monell* claim against the municipality alleging that the municipality had a policy of tasing non-suspect minors. *Id.* In support of her allegation, the plaintiff cited the department's written taser policy. *Id.* The court, however, concluded that the plaintiff failed to show a causal connection because the policy allowed for tasing of moving individuals and did not permit tasing non-suspect minors. *Id.* Since the policy was irrelevant to the injury alleged, the court disregarded the policy. *Id.* Next, the court found that the only other specific fact alleged by the plaintiff was the description of the incident involving the plaintiff. *Id.* at 623. Since more than the incident giving rise to the claim is required to establish a custom or practice, the court rejected the plaintiff's argument and dismissed the *Monell* claim. *Id.*

In the instant action, Plaintiffs claim that Defendants were the official policy-makers of OCC and as such are liable for Reed's alleged inadequate medical treatment and subsequent injuries. Similar to *Pena*, Plaintiffs allege that Defendants policy or practice allowed for the injury to occur. Plaintiffs, however, have failed to specifically identify the policy or provide specific facts showing a causal relationship between the alleged policy and the injury suffered by Reed. Moreover, to support their allegation that OCC had a custom or practice of depriving inmates of medical care, Plaintiffs have failed to do more than recite the facts that gave rise to the present action, and as noted in *Pena*, more is required to survive a motion for summary judgment. Thus, Plaintiff's *Monell* claims fail as a matter of law.

**b. Plaintiffs have failed to allege sufficient facts to avoid summary judgment on their failure-to-train claim.**

Plaintiffs similarly fail to allege sufficient facts to survive summary judgment on their failure-to-train claim. To succeed on a failure-to-train claim, the plaintiff must "prove that (1) the city failed to train or supervise the [employee] involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted a deliberate indifference to the plaintiff's constitutional rights." *Id.* (*citing Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001)). Ordinarily, to show deliberate indifference, the plaintiff must establish "a pattern of similar constitutional violations by untrained employees." *Id.* (*citing Connick v. Thompson*, 563 U.S. 51, 62 (2011)).

In *Pena*, discussed above, the court held that the plaintiff could not succeed on her failure-to-train claim because she failed to allege that the defendant engaged in a pattern of similar unconstitutional conduct. *Id.* Here, Plaintiffs, in attempting to assert their claim under the Rehabilitation Act, allege that Reed was denied access to medical treatment while other similarly situated individuals were afforded access to medical treatment. In making this argument, Plaintiffs acknowledge that no pattern of similar conduct existed and that, while Reed was allegedly denied medical care, others received the care needed.

By failing to allege a pattern of unconstitutional conduct, Plaintiffs attempt to establish their claim through a single incident. A single incident can sometimes establish a failure to train claim; however, case law suggests that the plaintiff must show that the individual who committed the constitutional violation received no training whatsoever. *Id.* at 624. (noting that the single incident exception is a narrow one, which the Supreme Court has declined to extend multiple times). Plaintiffs have likewise failed to allege that the medical staff at Ouachita Correctional

10

Center received no training and have failed to establish the single incident exception. Thus, these claims must also be dismissed.

### 3.  Norman is entitled to qualified immunity.

Defendants next argue that Norman is entitled to qualified immunity.[38] In support of this, Defendants note that Norman lacked personal involvement in the case and that there is no evidence to substantiate a failure to train or supervise claim.[39] Defendants also mention that Norman provided first aid training to personnel and that Deputy Chapman, one of her subordinates, immediately provided first aid to Reed and contacted paramedics.[40] Defendants' argument concludes by noting that without personal involvement or evidence of constitutional violations by subordinates, Norman is entitled to qualified immunity.[41]

In response, Plaintiffs argue that qualified immunity is not applicable in this case based on the established law and Defendants' knowledge of Plaintiff's condition.[42] Plaintiffs refer to expert opinions regarding the inadequate medical intervention and treatment provided to Plaintiff in both the OCC and the Richwood Correctional Center ("RCC").[43] Plaintiffs conclude by stating that Defendants' knowledge of Plaintiff's condition makes the unlawfulness of their conduct clearly established.[44]

In certain circumstances, qualified immunity shields government officials performing discretionary functions from civil liability. *Anderson v. Creighton*, 107 S. Ct. 3034, 3038 (1987). In the instant action, Plaintiffs assert that Norman is liable because she is the supervisor of the officials who actually treated Reed. To overcome qualified immunity, a plaintiff must show that:

---

[38] [Doc. No. 103-1, pp. 29]
[39] [Id.]
[40] [Id. at pp. 32]
[41] [Id. at pp. 33]
[42] [Doc. No. 109, pp. 15–16]
[43] [Id. at pp. 13–15]
[44] [Id. at 15]

"(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiffs rights; and (3) the failure to train or supervise amounts to a deliberate indifference." *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).

Here, Plaintiffs claim fails at the third prong of the analysis. To prove that a defendant acted with deliberate indifference, the plaintiff must show that the official was aware of facts from which an inference could have been drawn that a substantial risk of serious harm exists, and he must also have drawn the inference. *Id.* "Deliberate indifference requires a showing more than negligence or even gross negligence." *Id.* Generally, to show deliberate indifference, "a plaintiff must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Id.*

Plaintiffs assert that Norman is liable for the conduct of the treating nurses and other prison workers because Norman was aware of Reed's condition; however, other than conclusory assertions, Plaintiffs offer no evidence showing that Norman was aware of Reed's condition. Moreover, Plaintiffs have not asserted a pattern of similar conduct, but rather conceded that other individuals were afforded adequate medical care. Without alleging a pattern of similar conduct, Plaintiffs have failed to establish the third required element to defeat Norman's qualified immunity. Norman is thus entitled to judgment as a matter of law.

### 4. Plaintiffs have not presented a valid claim under the Rehabilitation Act.

Defendants argue that Plaintiffs have not presented a valid claim under the Rehabilitation Act.[45] In support, Defendants assert that the provisions of the Act do not apply in this case because Reed was not denied the benefits of services or discriminated against based on a disability.[46]

---

[45] [Doc. No. 103-1, pp. 35]
[46] [Id.]

12

Further, Defendants contend that Plaintiffs have provided no evidence to support their claim of disability discrimination.[47] Therefore, Defendants maintain that Plaintiffs' claim under the Rehabilitation Act claim must be dismissed.[48]

Plaintiffs failed to respond Defendant's arguments on this issue.

This Court agrees that the Rehabilitation Act does not apply in this case. The Rehabilitation Act "prohibits disability discrimination by recipients of federal funding." *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011). Specifically, the Act provides that "no qualified individual with a disability shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." *Id.* (internal quotations omitted).

In the instant action, Plaintiffs have not claimed that Reed was disabled as defined under the Act or that he was denied benefits because of such disability. Because Plaintiffs have failed to allege a disability or discrimination because of a disability, their claims under the Rehabilitation Act fail.

### 5.  Plaintiffs do not have a valid claim under Louisiana state law.

Lastly, Defendants argue that Plaintiffs do not have a valid claim under Louisiana state law.[49] Defendants acknowledge that prison authorities have a duty to provide reasonable medical care to inmates, but they assert that this duty does not require a full hospital at the prison site.[50] In this case, Defendants argue that Reed received adequate medical treatment for his two previous medical requests.[51] Additionally, Defendants contend that when Reed fell and injured himself,

---

[47] [Id.]
[48] [Id.]
[49] [Id.]
[50] [Id.]
[51] [Id.]

paramedics were immediately contacted, and he received continuous care at the hospital until his death, in accordance with the applicable duty to provide inmates with reasonable medical care.[52]

Plaintiffs failed to respond to Defendants' arguments on this issue.

In their complaint, Plaintiffs allege that Defendants are liable under Louisiana Civil Code Articles 2315, 2315.1, and 2315.2. Specifically, Plaintiffs allege that Defendants breached their standard of care by depriving Reed of adequate medical treatment and refusing to treat him after several requests were made. The applicable standard of care requires prison officials to provide inmates with reasonable medical care. *Neidlinger v. Warden, Med. Dept.*, 38 So. 3d 1171, 1173 (La. App. 2d Cir. 2010). Reasonable medical care "does not require the maintenance of a full hospital" at the prison "in order to protect an inmate against every medical risk but does encompass the risk that an inmate will become sick or injured and require life-saving medical attention." *Id.*

In *Neidlinger*, the plaintiff was bitten by a spider while in the care of the defendants. The spider bite caused a serious infection which required hospital care. *Id.* at 1171. The plaintiff claimed that the defendants did not act reasonably in failing to provide him with antibiotics in the earlier stages of his infection. *Id.* at 1174. Further, the plaintiff argued that had he been administered antibiotics sooner, the infection would not have required hospital care. *Id.* In affirming the trial court's decision to grant summary judgment, the appellate court found that the defendant "merely stated his version of the facts, without the support of affidavits, depositions, or any other supporting evidence that would have been sufficient to establish" that he could prevail at trial. *Id.*

In the instant action, Reed was initially booked at OCC on November 4, 2015, and released on August 24, 2016.[53] During his stay, he submitted healthcare request forms on December 4,

---

[52] [Id. at pp. 35–36]
[53] [Doc. No. 103-3, p. 7]

2015, and April 25, 2016.[54] Reed was treated on both occasions and received prescription medication to combat his reported illnesses.[55] Reed was then rebooked at OCC on October 17, 2016.[56] Upon entrance, Reed denied any health conditions and did not request treatment.[57] A medical exam was scheduled for October 20, 2016;[58] however, on October 19, 2016, after leaving a court appearance, Reed fell and was transported to the hospital where he remained until he died.[59]

Plaintiffs claim that Reed was not afforded adequate medical care when in OCC's custody. Specifically, Plaintiffs contend that Reed made several undocumented requests and was denied medical services by OCC staff; however, Plaintiffs have not supported their assertions with affidavits, depositions, or any other evidence. Similar to the plaintiff in *Nwedlinger*, Plaintiffs have merely stated their version of facts with no evidentiary support. Moreover, Plaintiffs have not shown that they will be able to establish the breach element of their claims or satisfy their evidentiary burden at trial. For this reason, Plaintiffs' state law negligence claims under Louisiana Civil Code Article 2315 and 2315.2 fail.

### III.     CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED, ADUDGED, AND DECREED** that Defendants' Motion for Summary Judgment [Doc. No. 103] is **GRANTED**. All claims filed by Plaintiffs against Defendants are **DISMISSED WITH PREJUDICE**.

---

[54] [Id. at p. 16, 18]
[55] [Id. at p. 17, 19-21]
[56] [Id. at p. 12-15]
[57] [Id at. p. 14-15]
[58] [Id.]
[59] [Doc. 103-7, p. 2]

15

MONROE, LOUISIANA, this 28th day of July, 2023.

Terry A. Doughty
United States District Judge

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

**LESLIE REED ET AL**                            **CASE NO.  3:17-CV-01382**

**VERSUS**                                        **JUDGE TERRY A. DOUGHTY**

**LOUISIANA DEPARTMENT OF**                       **MAG. JUDGE KAYLA D. MCCLUSKY**
**CORRECTIONS ET AL**

<u>**JUDGMENT**</u>

For the reasons set forth in the Memorandum Ruling,

**IT IS ORDERED, ADJUDGED, AND DECREED** that Defendants Jay Russell and

Donna Norman's (collectively, "Defendants") Motion for Summary Judgment is **GRANTED**. All

claims filed by Plaintiffs against Defendants are hereby **DISMISSED WITH PREJUDICE**.

MONROE, LOUISIANA, this 28th day of July, 2023.

Terry A. Doughty
United States District Judge

17